Good afternoon, and may it please the Court. My name is Richard Waller. I'm here on behalf of the defendant appellant, Richard Gabrys. I'd like to start by thanking the Court for agreeing to hear argument on this issue. I understand a Class B misdemeanor is probably not the most severe case that makes its way onto your docket, but I think there are important constitutional considerations at play here, and I appreciate the opportunity to address them. It's my intention to focus the majority of my argument on those constitutional issues, specifically the role that the First Amendment plays in seeking to petition a government for a redress of grievances, and to air those grievances against a government official. That is what I believe the core of this case is, and I do believe that the facts are pertinent here. Mr. Gabrys is profane, Mr. Gabrys is loud, Mr. Gabrys is rude in the allegations, anything that would receive a timeout from my three-year-old without question. But he does this by calling a government complaint line held open to the public for the purpose  So you say it's a complaint line. Is it clear from the record that it's a complaint line as opposed to just the State's Attorney's Office? It was represented as a complaint line. I do believe that specific question was asked to Ms. Norquist, she's also known as Ms. Romer. I don't think that was ever contested at the trial level. I will posit that it is a line held open to the public. It is certainly the State's Attorney General line. It is not any of their individual numbers, shall we put it that way. So this is a complaint line for official State's Attorney business, or was it to complain about whether someone is ugly? I'm not sure if I understand the question, but I believe the allegations were that there were phone calls where he was calling somebody ugly. Yes, the allegations ultimately that he does call somebody. So even if it's a complaint line, it's really not for that. It's not for the purpose of receiving complaints? It's not for the purpose of receiving complaints about somebody's appearance. Well, I think this is the important part of this case. Really where are these lines and where are these boundaries? Obviously any time we have a First Amendment issue, we're going to run into these issues, right? Where can a private citizen express their displeasure and how can they express that displeasure? And this is not an easy answer, right? The First Amendment, if it only applied to complementary speech towards the government, wouldn't have to be part of our United States Constitution. It is designed precisely to protect that kind of speech which might make us feel uneasy. And this is codified within the law. I think Virginia v. Black is the leading case on this issue, which talks about cross-burning, right? Cross-burning as potentially protective political speech under the First Amendment, I can think of nothing more offensive or more potentially inciting than cross-burning, and yet somehow this is viewed as within the confines of the individual rights of the citizen. I don't think that we can simply sit here and say, well, because the government doesn't believe this was an appropriate purpose, therefore it's not an appropriate purpose. When one is seeking redress from the government, when one is petitioning the government from a redress agreement, says they are permitted to be, shall we say, aggressive or use offensive speech or things of that nature. We just saw on the news that an individual out of Michigan just told the President of the United States of America that he believes he's a pedophile protector. That's offensive speech. I'm sure the government felt harassed by that. I'm sure President Trump felt harassed by that because he immediately flipped him off and allegedly told him F you. This is within the confines of protected political speech. And more specifically, we have People v. Taylor, which is the 3rd District case, which specifically states, and it uses the fancy Latin term, which I'm sure I will butcher. Counsel, the Taylor case. Yes. Has the statute changed from the time the Taylor case came out of the 3rd District? I don't believe in any meaningful way that would impact this. I would default to, obviously, the legislative record on that, but I do believe, and importantly, what Taylor is analyzing is the word harass. And the word harass is really what's key and what's issued here. That's what's contained on the complaint. And that is, in essence, the allegations that occur at the trial level. And we know this because the special prosecutor very specifically said at the trial level, this is not a threat case. The special prosecutor very specifically admits, this is harassment. And when we look at the term harassment, this is where the state ends up in a strange kind of amorphous position, where they are trying to simultaneously say, this is constitutional because it's only outlawing something akin to a threat. That's the language specifically from People v. Taylor. And the nocer associi, I believe, is the term. My apologies to any native Latin speakers in the room. That it must be viewed in the context of the company it keeps, the words surrounding it. And this is viewed as something akin to a threat. And this is a great, bright line. This is a great standard to have, that I should be able to call a government official. It could be harassment to use a blow horn on the phone if you called somebody up and just did that without even giving, saying anything.  Blow horn would be a more interesting question. I think in a private capacity, I think there would very clearly be that argument. I think if I were to repetitively call Best Buy and play a blow horn, I'm sure in my age setting, Best Buy. But I can call Jim Glasgow and do it, but not an individual. I think there are additional protections that apply when one is attempting to contact a government actor. The First Amendment both protects my right to freedom of speech and my right to petition a government for redress of grievances. And there really aren't limitations on how I may seek to do that. If I- I've tried calling Best Buy, no one is going to listen. But when you have comments like, you ugly fucking bitch, and I could go on and on and on. My question is, what is the public- excuse me. What is the political message being conveyed there that is worthy of protection? If one were to only focus on ugly fucking bitch, I think there would be a legitimate question there. But that's not what the record shows. That's not what was alleged or what occurred here. There are numerous questions as to how a defense attorney can be a prosecutor at the same time. There are numerous questions as to how the Sixth Amendment implicates potential prejudice of an individual. And on record, these states' attorneys very specifically say, we do not answer those questions. We did not provide him with solutions to his problem or anything that he was seeking redress for. Admittedly, I don't think it should be up to the government to decide whether or not a political message is valid or not. What is the political message of calling the president a pedophile protector? You are insulting him. You are criticizing his actions. You are trying to make him take notice. That is no longer an individual right of a citizen. I think an individual does have a right. And again, where will you find that? I mean, the people made that decision when the jury found him guilty, not the government. And are we talking about the charge and the offense itself right now in your argument, I mean? Certainly. Or are we talking about the result? It does apply at both stages. I believe the first issue presented by the brief is as it pertains to the complaint. The fourth issue presented in the brief is as it pertains to the facts alleged to the jury. You are correct that a jury ultimately rendered a verdict, but this is where the third prong of the brief comes into play, that they were not instructed, as in the current state of the law, pursuant to Counterman v. Colorado, which requires the subjective intent to communicate a threat. And this is defined by Virginia v. Black as a true threat. The jury at no point was advised of the word threat. That was my blowhorn comment. Certainly. You're defining the statute as saying it's got to be a threat. Telephone harassment has got to be a threat because of this particular case. Am I correct? The statute, without question, says harassment. I believe People v. Taylor says that the word harassment must be interpreted as something akin to a threat. And I will defer to the language of People v. Taylor. I don't disagree with you as to the language of Taylor. I may disagree with Taylor, but I don't disagree with that. But can't we have harassment without a threat? Or you seem that Countryman is telling us that we can't. There's got to be a threat in there somewhere to be violating this law. Counterman, I believe, is important because it adds that there must be a subjective understanding of the intent to communicate a threat. I do believe the line is threat. Obviously, reasonable minds can disagree on that subject. But specifically as it pertains to addressing a public official, I think otherwise we are blowing open the door. If President Trump or a picture politician on the other side of the aisle that you dislike just gets to say, I feel harassed when Mr. Waller continually says I'm unfit for the job, is that now subject to criminal prosecution? I do not see any world in which the broad definition of harassment, which is utilized in this underlying case, is permissible in a society that is seeking to preserve the rights of the individual to exercise their freedom of speech. And I think this is important when we look to the long litany of cases. This is not the first time the First Amendment has been litigated. Hopefully it will not be the last. They all talk about the chilling effect on speech. What is the prospective chilling effect on speech if this government action is permitted to stand? And the answer here is terrifying. I have been on this case for four to five years, and I cannot honestly sit here and tell you what will or will not result in criminal charges. It will count. If Jim Glasgow suddenly feels harassed, I'm subject to arrest. They'll send armed officers to my door. If his receptionist feels harassed, they are permitted to proceed with criminal action. This cannot be the standard. There has to be something higher or else the First Amendment is purely illusory. This is an important fundamental right. I understand that Mr. Gabries might not be viewed as a model citizen. I understand the language he uses is not complimentary. I will suggest I've had numerous conversations with him about this. You disagree that a jury can find out whether or not that language has a purpose. You would not let a jury come to that conclusion or make that decision, I guess. I think in this hypothetical, a jury would have to be appropriately advised of the law. I think that if they are to find the purpose, that would need to be the subjective intent of the individual communicating the message pursuant to countermeasure. It's a tough question. I admit it's a tough question. I would think that, again, that would need to be something specifically communicated to the jury, which did not occur here, right? The jury was specifically instructed, pursuant to the model instructions, is this something that could be seen as harassment? I don't think harassment is the appropriate standard. I think that threat has to be the appropriate standard. And without that, I think we very seriously risk losing the protections of the First Amendment afforded to the citizens. With that, I would conclude my argument at this time, unless the justices have any pending questions. Nothing. Just, do you have anything as it relates to the suppression of the videotape? It's rather standard, I believe. Your Honors get to review that de novo, because there was no live testimony. I would note he does appear to be in a stressed position. I don't think even that it's contested that this is not pursuing to Miranda or anything given. I do think, again, it speaks to kind of the... It's an interrogation, is the question. I think that's it. I think that's really the question. I think Your Honors can make that determination, regardless of my opinion on that issue. Thank you. That's appreciated. Thank you. Laura, I apologize. I don't know if I've pronounced your name many times. Bellion? Bailon. Bailon. Thank you. May it please the Court? Counsel? Laura Bailon on behalf of the people. The main issue here, as argued today, is a threat required under the Harassment by Telephone Statute. And the answer is no. The people aren't trying to argue that there's some kind of Schrodinger's threat, where it's sort of threat, not a threat. Instead, what the statute prohibits is making a telephone call with the intent to abuse, threaten, or harass any individual at the called number. So a threat is not an element of the offense, because it's in the disjunctive. And then we have the Illinois Supreme Court's guidance from Kuebel v. Parkins, which directly addresses this statutory language. I think it was later recodified, but the language stays the same. And the Illinois Supreme Court found that the statute was not unconstitutionally vague or overbroad, despite containing the language abuse or harass. So Parkins and also Taylor interpret the terms abuse and harass as involving a level of emotional distress that is similar to the level of emotional distress that can be caused by a threat. But that doesn't mean a threat itself is required. Instead, what's required is a certain level of emotional distress, and that level was caused by abuse or harassment in this case. So under Parkins, the statute does not violate the First Amendment by being vague or overbroad. The other potential First Amendment argument where the true threats situation would come to play is whether the statute is an unconstitutional content-based restriction on speech. And this issue is discussed in Kucharski, which describes how statutes that include a specific intent element, as the statute did, you need to have a specific intent to abuse, threaten, or harass. Those statutes involve constitutionally unprotected conduct in that they regulate conduct rather than the content of speech. Speech may be restricted where it embodies a particularly intolerable and socially unnecessary mode of expressing an idea, and where a statute regulates conduct that accompanies speech rather than the content of the speech itself, it's not an unconstitutional content-based restriction on speech. So where the true threats doctrine comes into play is that there is a content-based restriction on speech with the true threat. A true threat is your statute concerns the content of the speech. And the true threats doctrine is an exception to allow... But we're not talking about the true threats doctrine. Exactly. So because this isn't a content-based restriction on speech, we don't need an exception such as the true threats doctrine. We don't need a true threat. A true threat doesn't have to be an element of the offense, which has already been found not overbroad and not impermissibly vague and not to have too much of a chilling effect under Parkinson-Taylor. Let me give you a hypothetical. If Mr. Gavries would have called because he had been given notice as a witness in a case for some other legitimate purpose to call the State's Attorney's Office, he had a question about it. And then through the conversation with the receptionist, he became frustrated, angry, and used the exact same language that he used in this case. Would that be telephone harassment? Just one time? Let's say twice. There were two calls here. Let's call it twice. I'd say even once or twice, probably not. Because you need to have sufficient evidence from what you can infer the intent. But here we have over and over and over again, over the course of multiple months, and these charges arise after Jim Long spoke with the defendant and told him the impact the calls were having on the office. He told him he was disturbing and abusing the receptionist and that the investigators who serve as court security had to be notified because people were concerned that it was a security threat. So at the point in which it is screaming, swearing, most vulgar insults over and over and over again to the point where once or twice, maybe just annoying. Mere annoyance doesn't satisfy the statute under the case law. And it shouldn't. There needs to be a higher bar than mere annoyance. But wherever the line is, the nature of this, the facts of this case are so far over it that it did rise to an intent to abuse, harass. And the receptionists both testified that they take calls from angry people all the time. And that's their job, and they're fine doing their job. But when this receptionist eventually feels scared and upset and disturbed and feels unsafe because she feels that this caller is so angry, what's going to stop him from coming to the building and she's going home crying and can't sleep at night, that's more than just mere annoyance. And Mr. Long testified that this was the only caller to this degree that had ever called in the office in this manner. He says that he knows that people are upset. He's happy to talk to anybody about any concerns they have all the time and that people frequently use curse words and express anger. And none of that's a problem. I mean, it shouldn't be. But when the circumstances rise to the level of showing the intent to abuse or harass, meaning the intent to cause a significant level of emotional distress, that's where it becomes an offense. Are there any further questions? I don't have any, Counsel. The people have asked that this Court affirm defendant's conviction and sentence. Thank you, Ms. Bynum. Thank you. Mr. Waller, rebuttal. Counsel, before you begin, I have a question. Certainly. You know, you're clearly seizing on this notion of a threat and the requirement of a threat. But I know that the phone calls involve the State's Attorney's Office. Just hypothetically, what if your client sent a pizza to Judge Hale, who was the trial judge? Could that reasonably be construed as an intent to threaten her? I don't see how a pizza would. Okay. If it was sent to her home? Perhaps to her home. I'm sorry. Maybe I wasn't clear. Sent to her home. Yes. Obviously, that would be factually determinative. I do think those are the kind of statements. I think the one that's commonly referred to is, I saw your children get off the bus today or something like that. I think that could normally be interpreted as something's threatening. I know specifically where you live. And I think it's a very pertinent point because, again, the allegations is there are numerous phone calls that are attempted by the State to be reshaped as somehow intending to threaten or harass these individuals. And, you know, Ms. Snorkis, who, again, I understand. I have sympathy as a human being and all these things. But there's never anything outside of their function as a government actor. That really is where the line is, right? There's a reason why judges' addresses are not necessarily publicly accessible or public information because that could be construed as potentially a threat. I know where you are. I know where you sleep. I know where your children go to school. This is not what's present in this case. The line here, and I mean that in the literal sense, the line being called is the government line. I understand there's some dispute about the characterization, if it is there for the purposes of receiving complaints or anything like that. But what is undisputed is this is a government line. This is the line published on their website, held open to the public. This is who you call if you have a question. And we do not have categories within the First Amendment. It is not reserved solely for the eloquent amongst us. It's not reserved solely for those of us who know how we can tell somebody what we honestly think about them without raising our voice or resorting to profanity. Mr. Gabries is a private citizen. Mr. Gabries was seeking and called this open government line, and there was nothing that could ever be construed as a threat. The state here says, well, obviously we passed it. Obviously we passed it. I have no idea where the line is, but obviously we passed it. Why is this some factual determination that the state just gets to pick and choose whenever they so see fit? And by the way, who's next? So 160 phone calls isn't enough. It's 80. It's 50. It's 40. It's 3. This is a slippery slope fallacy, but it's important. If we're not able to tell citizens how many times you get to criticize an official before it becomes a crime, how on earth do they know what the line's going to be tomorrow? I understand that this behavior is not exemplary, but this is why we have a case at issue, because these boundaries need to be drawn, and this issue has been litigated extensively throughout our history, and far greater legal minds than I have pointed to threats. Threat is the line in the sand. Threat is what needs to be evaluated. Threat is when speech becomes impermissible when speaking to a public official, because the alternative is that these public officials get to make these determinations. Public officials get to say, this was a domestic terrorist, and I was in fear of my life, and shoot individuals dead in the streets. This is what we're dealing with with this country right now. Until our elected officials start taking their obligation to serve the public and not the other way around seriously, we are going to continue to deal with it. I'm respectfully requesting that this Court reverse the trial court's decision and vacate the sentence of guilty or for any other relief deemed appropriate. Thank you. If this is any questions. No, sir. Thank you, counsel. Thank you. Thank you, Ms. Willett. Counsel, thank you very much for your spirited arguments that borrow one of my colleagues' terms. Always an interesting topic, the First Amendment. We will take this case under advisement and issue a decision in due course. And the Court is going to be adjourned for lunch, I believe. Thank you.